UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLISON CYR,<br><br>    Plaintiff,<br><br>            v.<br><br>BOSTON MEDICAL CENTER,<br><br>    Defendant. | Civil Action No. 1:22-cv-11930-JEK |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and L.R. 56.1, Defendant Boston Medical Center ("BMC" the "Hospital" or "Defendant") submits this Memorandum of Law in support of its Motion for Summary Judgment. As set forth below, Defendant is entitled to judgment as a matter of law on all counts of Plaintiff's Complaint.

**PRELIMINARY STATEMENT**

Plaintiff, Allison Cyr ("Plaintiff"), a former nurse in BMC's Neonatal Intensive Care Unit ("NICU"), asserts two claims of religious discrimination regarding the Hospital's denial of Plaintiff's request for an exemption to its COVID-19 immunization requirement. Specifically, Plaintiff alleges that her beliefs prohibit her from receiving the COVID-19 vaccine and BMC's denial of her request for a religious exemption and decision to terminate her employment for failure to comply with its Immunization Policy (the "Policy") was discriminatory under Title VII (Count 1) and M.G.L. c. 151B (Count 2).

Plaintiff's claims fail as a matter of law. Plaintiff cannot establish that the beliefs she relies upon were religious in nature. Rather, the purported beliefs expressed in Plaintiff's exemption

1

request consist of amorphous individual beliefs that are not aligned with Plaintiff's identified religious organization, and medical judgments regarding the safety and efficacy of the COVID-19 vaccine.

Further, even if Plaintiff's beliefs were religious in nature, which they were not, the Hospital could not approve Plaintiff's request for an exemption because allowing her to work in her position unvaccinated would have posed an undue hardship on the Hospital. If Defendant permitted Plaintiff to work unvaccinated as a nurse in the NICU she would have posed a threat to the health and safety of staff and vulnerable newborn infant patients.

For these reasons, as more fully described below, this Court should grant Defendant's Motion for Summary Judgment and dismiss Plaintiff's action.

## FACTUAL BACKGROUND

BMC is a safety-net hospital located in Boston's South End. Defendant provides a comprehensive range of inpatient, clinical, and diagnostic services in more than seventy medical specialties and subspecialties. Boston Medical Center's Statement of Material Facts ("SOF") at ¶ 2. Between January 31, 2020 and July 31, 2021, BMC was on the frontlines of the COVID-19 pandemic and during this time, treated a total of 3,281 patients for COVID-19. SOF at ¶ 9. Of the 3,281 patients treated for COVID-19 between January 31, 2020 and July 31, 2021, a total of 226 patients died from the virus or related complications. SOF at ¶ 9. Several hundred BMC staff members reported contracting COVID-19 between January 31, 2020 and July 31, 2021. *Id*. BMC treated upwards of 993 patients for COVID-19 between August 1, 2021 to January 31, 2022. SOF at ¶ 41.

At the height of the pandemic, BMC was forced to close several units or convert them into COVID-19 units to care for patients critically ill with COVID-19. SOF at ¶ 8. By July 31, 2021,

over six hundred thousand persons had died of COVID-19 in the United States. *See* Centers for Disease Control & Prevention ("CDC") COVID Data Tracker.[1] To date, over one million persons have died of COVID-19 in the United States. *Id.*

BMC began offering the COVID-19 vaccine to its employees in January 2021. SOF at ¶ 10. On July 13, 2021, BMC announced that it would require all employees to be vaccinated against COVID-19. SOF at ¶ 11. In August 2021, BMC implemented an Immunization Policy (the "Policy") that required all employees to be vaccinated against COVID-19. SOF at ¶ 12. In making the decision to implement a mandatory COVID-19 vaccination policy, BMC relied on the recommendations of the CDC regarding the best way to reduce transmission of the virus amongst healthcare workers. SOF at ¶ 13. In addition to relying upon recommendations from the CDC, BMC also relied on its own experience regarding how to reduce the risk of healthcare workers infecting patients. *Id.* At the time BMC implemented its Policy, the CDC recommended vaccination as the best way to prevent COVID-19 infection and transmission of the virus. SOF at ¶ 14.

On September 12, 2021, Plaintiff submitted a request for a religious exemption to BMC's COVID-19 vaccination requirement. SOF at ¶ 16. Plaintiff identifies as Christian. SOF at ¶ 17. Plaintiff stated she was seeking a "religious" exemption because she was breastfeeding and "trying for another baby soon" and she would "not expose my child or myself to a vaccine that has not been completely FDA approved[2] or has had long term testing on breastfeeding moms or pregnant women." SOF at ¶¶ 18-20. Plaintiff stated she had "numerous concerns" regarding the safety

---

[1] Centers for Disease Control & Prevention COVID Data Tracker: Trends in United States COVID-19 Hospitalizations, Deaths, Emergency Department (ED) Visits, and Test Positivity by Geographic Area <https://covid.cdc.gov/covid-data-tracker/#trends_totaldeaths_select_00>.
[2] The FDA approved the first COVID-19 vaccine on August 23, 2021. The U.S. Food & Drug Administration News Release: FDA Approves First COVID-19 Vaccine, Approval Signifies Key Achievement for Public Health (Aug. 23, 2021) < https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine>.

and efficacy of the vaccine and its impact on her fertility. SOF at ¶¶ 18-20, 22. Plaintiff asserted the religious beliefs which prevented her from receiving the COVID-19 vaccine were her opposition to abortion and her belief in free will. SOF at ¶¶ 23-24. Plaintiff supported this assertion based on Bible verses she found "through Google." SOF at ¶ 26-27.

Plaintiff attached a letter from True Hope Ministry (the "Ministry") to her religious exemption request. SOF at ¶ 28. The Ministry's stated beliefs prohibit members from "intrusions" such as "covid testing and vaccines". SOF at ¶ 31. The Ministry's stated beliefs also prohibit members from wearing "any sort of face covering or shield." SOF at ¶ 34. Plaintiff testified she found the Ministry through Google or Instagram while "doing some research on help with a religious exemption." SOF at ¶ 29. Plaintiff received the letter via email after completing a form on the ministry's website. SOF at ¶ 30. Plaintiff testified she never spoke to anyone at the Ministry. SOF at ¶ 35. Notably, Plaintiff has taken a COVID-19 test, which violates the stated tenets of the Ministry. SOF at ¶ 33.

Plaintiff testified at her deposition that she was a member of the Ministry in 2021, prior to joining the local church to which she also belongs, Christ Community Church. SOF at ¶ 36. However, Plaintiff then admitted that she joined Christ Community Church five years ago – 2019, which was years prior to her finding the Ministry online. *Id*. Plaintiff admitted she did not seek a letter of support for her exemption request from her local church because she felt she was too "new." SOF at ¶¶ 36-37. However, Plaintiff admitted she requested a letter of support from the Ministry after finding it through "Google or Instagram." SOF at ¶ 29.

Plaintiff's request for a religious exemption to BMC's Policy was denied on September 30, 2021. SOF at ¶ 38. Plaintiff had until October 15, 2021 to comply with the Policy. *Id*. On October

15, 2021, BMC terminated Plaintiff's employment for failing to comply with the Policy. SOF at ¶ 40.

## ARGUMENT

### I. Summary Judgment Standard

On a motion for summary judgment, the Court evaluates whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *E.E.O.C. v. Unión Independiente De La Autoridad De Acueductos Y Alcantarillados De P.R.*, 279 F.3d 49, 54 (1st Cir. 2002) (quoting *Barbour v. Dynamics Research Corp.*, 218 F.3d 1, 5 (1st Cir. 2000)). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rodrique v. Hearst Commc'ns, Inc.*, CA No. 1:22-cv-12152, 2024 U.S. Dist. LEXIS 30258 at *2 (D. Mass. Feb. 22, 2024) (quoting *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990)). "The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." *Sánchez-Rodríguez v. AT&T Mobility P.R., Inc.*, 673 F.3d 1, 9 (1st Cir. 2012). "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." *Rodrique*, *supra* (quoting *Torres v. E.I. Dupont de Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000)). Further, "a conglomeration of conclusory allegations, improbable inferences, and unsupported speculation is insufficient to discharge the nonmovant's burden." *Sánchez-Rodríguez*, 673 F.3d at 9.

### II. Defendant Is Entitled To Summary Judgment On Plaintiff's Claims Of Religious Discrimination Pursuant To 42 U.S.C. § 2000e-2(a) And M.G.L. c. 151B § 4(1A).

In Counts I and II of the Complaint, Plaintiff alleges that Defendant violated 42 U.S.C. § 2000e-2(a) and M.G.L. c. 151B § 4(1A), respectively, by denying her request for an exemption

5

from its COVID-19 immunization policy.  Title VII makes it unlawful for an employer "to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of [her]…religion…" 42 U.S.C. § 2000e-2(c)(1). The state law counterpart, M.G.L. c. 151B, § 4(1), prohibits employers from discriminating against any employee because of her religious creed. The Massachusetts statute also makes it unlawful for "an employer to impose upon an individual as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such individual to violate, or forego the practice of, his creed or religion…and the employer shall make reasonable accommodation to the religious needs of such individual." M.G.L. c. 151B, §4(1A).

The First Circuit applies "a two-part framework in analyzing religious discrimination claims under Title VII." *Sánchez-Rodríguez v. AT&T Mobility Puerto Rico, Inc.*, 673 F.3d 1, 12 (1st Cir. 2012).  "Chapter 151B utilizes an evaluative framework identical to the one applied in federal Title VII accommodation cases." *Brox v. The Woods Hole*, 590 F. Supp. 3d 359, 366 (D. Mass. 2022).  "'First, the plaintiff must make [her] *prima facie* case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action.'" *Sanchez-Rodriguez*, 673 F.3d at 12, *citing Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 133 (1st Cir. 2004); *see also Mass. Bay Transp. Auth.*, 450 Mass. at 335-336. "'Once the plaintiff has established this *prima facie* case, the burden shifts to the [employer] to show that it made a reasonable accommodation of the religious practice or show that any accommodation would result in undue hardship.'" *See Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 131 (1st Cir. 2004); *Sanchez-Rodriguez*, supra., quoting *EEOC v. Unión Independiente de la Autoridad de Acueductos y Alcantarrillados de P.R.*, 27 F.3d 49, 55 (1st Cir. 2002) (emphasis added).  The

6

"ultimate touchstone" of the analysis is "whether the employer's actions were improperly motivated by discrimination." Kosereis v. Rhode Island, 331 F.3d 207, 212-213 (1st Cir. 2003).

### A. Plaintiff Cannot Establish That The Beliefs Which Conflicted With Defendant's Policy Are Religious.

To establish a *prima facie* case, Plaintiff must show that she has a belief that is "religious" in nature and that is "sincerely held." *See Griffin v. Mass. Dep't of Revenue*, CA No. 1:22-cv-11991, 2023 U.S. Dist. LEXIS 125845 at *6 (quoting *Union Independiente*, 279 F.3d at 56). *See also Thornton v. Ipsen Biopharms., Inc.*, 1:23-cv-11171, 2023 U.S. Dist. LEXIS 193116 at *3 (D. Mass. Oct. 26, 2023). "A belief is religious if it 'addresses fundamental and ultimate questions having to do with deep and imponderable matters, is comprehensive in nature, consisting of a belief-system as opposed to an isolated teaching, and is accompanied by certain formal and external signs." *Id.*, quoting *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 491 (3d Cir. 2017).; *see also Griffin*, 2023 U.S. 125845 at *9.

Plaintiff's exemption request and deposition testimony evidence that her exemption request was motivated by her concerns about the safety and efficacy of the COVID-19 vaccine and its impact on her ability to breastfeed and her fertility – not a sincerely held religious belief. SOF at ¶ 18-20, 22. Plaintiff underwent extensive fertility treatment between 2019 and 2022. SOF at ¶ 21. Plaintiff expressed concerns regarding the effects of the vaccine on her child – based on a concern that the vaccine would be transmitted to her child while breastfeeding – and her fertility in three separate instances in her exemption request. SOF at ¶ 18-22. Safety concerns related to her maternity is the **sole reason** for seeking an exemption that Plaintiff chose to handwrite onto the religious exemption request form.

Given the foregoing, it is patently clear that Plaintiff requested an exemption to avoid receiving the COVID-19 vaccine due to medical judgments on the effects of the vaccine and not

for religious reasons. Plaintiff's medical beliefs regarding the safety of the vaccine do not qualify as religious beliefs. *See*, *Brox v. Hole*, 590 F. Supp. 3d 359 (D. Mass. 2022) (determining that plaintiffs' opposition to the COVID-19 vaccine is "based primarily on philosophical, medical, or scientific beliefs, or personal fears and anxieties rather than bona fide religious practices.") (quoting *Together Employees v. Mass. Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 2021 U.S. Dist. LEXIS 217f386, at *16 (D. Mass. Nov. 10, 2021). *See also Cox v. Valley Health Sys.*, 5:23-cv-00051, 2024 U.S. Dist. LEXIS 114491, at *11-12 (W.D. Va. June 28, 2024) (dismissed religious accommodation claim because plaintiff's stated objections to the vaccine primarily rested upon her personal medical judgment rather than on her religious beliefs); *Hurley v. Varian Med. Sys.*, 2:23-cv-42, 2024 U.S. Dist. LEXIS 92415, at *12-13 (E.D. Wis. May 23, 2024) (explaining that "[a] medical decision reached through prayer is still a medical decision" and "if a person concludes that the vaccine would violate [a] belief because he regards it as unsafe or untested, that is a scientific rather than a religious objection"); *Lane v. Bayhealth Med. Ctr., Inc.*, 2024 U.S. Dist. LEXIS 19470, at *12 (D. Del. Feb. 5, 2024) (dismissing a religious accommodation claim because plaintiff's religious exemption form did not describe a religious belief that prevented her from receiving the vaccine beyond her own differentiation of vaccines that, in her judgement, were safe).

Plaintiff does not have a sincerely held religious belief which conflicts with BMC's Policy. *See Union Independiente*, 279 F.3d at 56. Although Plaintiff couched her request in religious terms, the use of religious vocabulary does not elevate a personal medical judgment to a religious belief. *See Ellison v. Inova Health Care Servs.*, 1:23-cv-00132, 2023 U.S. Dist. LEXIS 164824, at *11-13 (E.D. Va. Sept. 14, 2023) (dismissing a religious accommodation claim where the plaintiff's own statements, though "couched in religious terms", showed that he "refused the vaccines based on concerns of vaccine safety").

Further, Plaintiff's objection to vaccination on the basis of her belief in "free will" is not religious – and it also did not conflict with the Policy because Plaintiff, ultimately, *chose* to not receive the vaccine. *See Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465-66 (M.D. Pa. 2022) (plaintiff's belief that COVID-19 vaccine was harmful and unnecessary and interfered with her "God given right to make [her] own choices" was not religious).

### B. Plaintiff Cannot Establish That Beliefs, Which Conflicted With Defendant's Policy, Were Sincerely Held.

To the extent Plaintiff points to purported religious beliefs, she lacks sufficient evidence that the beliefs were sincerely held. "The element of sincerity is fundamental, since 'if the religious beliefs that apparently prompted a request are not sincerely held, there has been no showing of a religious observance or practice that conflicts with an employment requirement.'" *Union Independiente*, 279 F.3d at 56 (citation omitted).

Plaintiff testified she searched the internet – via Google – for information that would support her religious exemption request, including the Biblical verses cited in her personal statement. Plaintiff's stated objection to the use of fetal cell lines in the development and manufacturing of COVID-19 vaccines is similarly information she found "online." SOF at ¶ 24. Despite her stated opposition to the use of fetal cells in the development of the vaccine, when undergoing fertility treatments Plaintiff consented to the use of discarded embryos in scientific research. SOF at ¶ 21.

Plaintiff also testified she purchased a form letter from True Hope Ministry, an online ministry,[3] to avoid the vaccine. The Ministry is in San Clemente, California and it provides letters

---

[3] Internet searches for True Hope Ministry in San Clemente, California result in a website called The Healthy American, which has the same mailing address as True Hope Ministry (205 Avenida del Mar PO Box 681 San Clemente, CA 92674) and advertises a workshop on completing religious exemptions at a cost of $495. *See* The Health American < https://www.thehealthyamerican.org/true-hope-david-hall> (Aug. 16, 2024).

supporting religious exemptions to COVID-19 vaccine requirements to any individual who completes an online form. *See* Exhibit 5 to Piaget Dec. Individuals seeking a letter of support must pay a set fee of $195 or $495. *Id.* Plaintiff admitted she searched the internet for help with her religious exemption and this is how she found the Ministry. SOF at ¶ 29. Plaintiff testified that she never spoke to an individual at the Ministry. SOF at ¶ 30.

Plaintiff also testified that she has attended religious services at Christ Community Church since 2019. Although she regularly attends services at Christ Community Church, Plaintiff testified she did not request a letter of support from the religious leader of the church because her family was "pretty new there still." SOF at ¶¶ 36-37. Despite this concern of being too "new" to request a letter of support from her religious leader, Plaintiff apparently felt no qualms in completing an online form and paying a fee to receive a letter of support from a religious leader she had never met or spoken to.

From Plaintiff's testimony and admissions, she clearly contacted the Ministry for the sole purpose of receiving a letter of support for her religious exemption request. In fact, Plaintiff could not recall the name of the Ministry throughout her deposition and referred to it as "New Hope" rather than "True Hope." *See* Exhibit 1, Cyr. Dep. at 25:11-13, 26:17-27:3. Plaintiff's testimony undercuts her assertions that she was a member of the Ministry and that the letter of support provided by the Ministry reflects her religious beliefs. Plaintiff's religious exemption request does not reflect sincerely held religious beliefs and is, instead, cut-and-pasted from anti-vaccine forms that are widely available on the internet.

The above undisputed facts demonstrate that Plaintiff's stated belief was included to construct a religious basis for her objection to the COVID-19 vaccine. It is evident from Plaintiff's testimony and the record evidence that Plaintiff had medical concerns regarding the vaccine and

conducted an internet search for grounds upon which to assert a "religious" belief in order to qualify herself for a recognized exemption. SOF at ¶¶ 18-20, 22. Plaintiff cannot establish that she objected to the vaccine due to a sincerely held religious belief.

Therefore, Defendant is entitled to summary judgment because Plaintiff lacks sufficient evidence to establish that a sincerely held religious belief prevented her from receiving the COVID-19 vaccine.

### C. Plaintiff's Request For An Exemption Posed An Undue Hardship.

Even assuming Plaintiff could establish a *prima facie* case of failure to accommodate her religious beliefs, which she plainly cannot, her claim nevertheless fails because Plaintiff's requested accommodation from the Policy created an undue hardship on BMC's operations.

Pursuant to Title VII,[4] an employer is not required to provide a religious accommodation to an employee if doing so would cause an undue hardship. *See TWA v. Hardison*, 432 U.S. 63, 84 (1997); *see also Cloutier,* 390 F.3d at 134; *Together Emples.*, 2021 U.S. Dist. LEXIS 217836 at *46 (Nov. 10, 2021). Undue hardship is "shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 143 S. Ct. 2279, 2294 (2023). To prevail on a defense of undue hardship, Defendant must establish that "the burden of granting [Plaintiff's] accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id*. at 2295. Courts must apply the undue hardship test "in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." *Id*. *See also Bazinet v. Beth Israel Haley Health, Inc.*, No. 24-1148, 2024 U.S. App. LEXIS 20349, at

---

[4] Massachusetts courts consider federal law construing Title VII in interpreting G.L. c. 151B, 4(1A). *See Mass. Bay Transp. Auth.*, 450 Mass. at 337-338. *See also Robinson v. Children's Hosp. Bos.*, 2016 U.S. Dist. LEXIS 46024 at *31 n.7 (D. Mass. Apr. 5, 2016) (recognizing that the undue hardship standard under Massachusetts law and Title VII share substantial common ground).

11

*17 (1st Cir. Aug. 13, 2024). The impact of an accommodation on coworkers is relevant if it goes on to affect the conduct of the business. *Groff,* at 2296.

The First Circuit has recognized that consideration of whether a particular accommodation posed an undue hardship includes "not only direct economic costs, but indirect ones related to health and safety." *Adams v. Mass. Gen. Brigham Inc.*, 2023 U.S. Dist. LEXIS 174606 at *15 (D. Mass. Sep. 28, 2023) (citing U.S. Equal Emp. Opportunity Comm'n, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws: § L (2021)); *see also Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 135, 137 (1st Cir. 2004) (stating that an employer's "loss of control over its public image may be a relevant factor"). Thus, "[u]ndue hardship can also exist if the proposed accommodation would either cause or increase safety risks or the risk of legal liability for the employer." *Robinson v. Children's Hosp. Boston*, 2016 U.S. Dist. LEXIS 46024, at *26 (D. Mass. Apr. 5, 2016) (citation omitted).

Plaintiff worked as a nurse in the Neonatal Intensive Care Unit ("NICU") providing direct care to critically ill newborns. SOF at ¶¶ 3-4. Plaintiff was required to come into direct contact with patients throughout her shift when providing care, such as changing diapers, bottle feedings, and administering medications. SOF at ¶¶ 5-6. Plaintiff also regularly interacted with physicians and other nurses throughout her workday. SOF at ¶ 7. Given Plaintiff's essential job functions, BMC determined that providing her with an exemption would pose an undue hardship to BMC's business because allowing her to perform duties unvaccinated posed a threat to the health and safety of staff and patients. SOF ¶¶ 39, 42.

"[R]elevant case law holds that, in a global pandemic, unvaccinated employees cause an undue hardship to employer-hospitals because they can spread COVID-19 to colleagues and vulnerable patients." *Together Emps. v. Mass. Gen. Brigham Inc.*, 573 F.Supp.3d 412, at *22 (D.

Mass. 2021)). *See also Brox v. The Woods Hole*, 590 F.Supp.3d 359, 367 (D. Mass. 2022) (determining that plaintiffs were unlikely to succeed on the merits of their claims of religious discrimination because granting exemptions to the COVID-19 vaccine posed an undue hardship on the employer) rev'd on other grounds 83 F.4th 87 (1st Cir. 2023). Further, "hospitals are uniquely positioned when balancing different responses to the outbreak of disease and should be afforded 'substantial deference' when making determinations about appropriate measure to cope with a worldwide pandemic." *Taylor v. Milford Reg'l Med. Ctr. Inc.*, CA 4:23-cv-40009, 2024 U.S. Dist. LEXIS 85111, at *16 (D. Mass. May 10, 2024) (citation omitted); *Adams*, 2023 U.S. Dist. LEXIS 174606, at *19 (reasoning that employer-hospital could have reasonably concluded that all of its employees should be vaccinated, without exception); *Robinson*, 2016 U.S. Dist. LEXIS 46024, at *9-10 (granting hospital's motion for summary judgment because accommodating plaintiff's request to remain unvaccinated while employed at hospital is an undue hardship as it would increase the risk of spreading influenza to an already vulnerable population).

BMC is in the business of providing medical care to patients, including newborn infants who are critically ill, and are vulnerable to severe illness and medical complications from COVID-19 infection. BMC witnessed firsthand how quickly the virus was transmitted between healthcare workers and patients and followed the CDC's recommendation that vaccination was the best way to prevent such transmissions. SOF at ¶ 18. Transmission to other staff would have significantly impacted BMC's ability to fully staff its unit and provide adequate patient care at a time when it was already struggling with understaffing. SOF at ¶ 36. Based on its experience during the pandemic, BMC reasonably concluded that requiring employees to be vaccinated was the best way to protect the hospital against liability for hospital-acquired COVID-19 infections. SOF at ¶ 37; *see e.g., Melino v. Boston Med. Ctr.,* CA No. 1:22-12119, 2024 U.S. Dist. LEXIS 94282, at *2 (D.

13

Mass. May 28, 2024); *Together Emps.*, 573 F.Supp.3d at 435 (holding that "alternatives to vaccines, such as masking, periodic testing, and social distancing, would impose an undue hardship."). *See also Snow v. Women's Healthcare Assocs., LLC*, CA No. 3:23-cv-01392, 2024 U.S. Dist. LEXIS 137202, at *22-23 (D. Or. Aug. 2, 2024) (granting employer healthcare provider's motion for summary judgment because granting plaintiff's religious exemption posed an undue hardship due to the risk an unvaccinated employee posed to the health of staff and patients); *Wise v. Child's Hosp. Med. Ctr. Of Akron*, 5:22-cv-02092, 2024 U.S. Dist. LEXIS 119686, at *6 (N.D. Ohio July 9, 2024) (granting pediatric hospital's motion for summary judgment because allowing pharmacist to work unvaccinated created a heightened health risk to patients, which posed an undue hardship on the hospital).

Courts examining vaccine mandates have reasoned that "taking steps to avoid transmitting a dangerous virus to patients is consistent with the fundamental principle of the medical profession: first, do no harm." *Biden v. Missouri*, 142 S. Ct. 647, 652 (2022); *see also Florida v. Dep't of Health and Human Servs.*, 19 F.4th 1271, 1288 (CA11 2021) (It would be the "very opposite of efficient and effective administration for a facility that is supposed to make people well to make them sick with COVID-19."). The First Circuit has determined that an employer hospital has a "strong interest in maintaining public trust and confidence in its ability to provide a reasonable safe environment for its patients, and to assure the public that they may seek health care in its facilities without an unnecessary risk of infection." *Together Emps.*, 573 F.Supp.3d at 436. Furthermore, "Title VII does not require employers to test their safety policies on employees to determine the minimum level of protection needed to avoid injury." *Robinson*, 2016 U.S. Dist. LEXIS 46024, at *26.

Here, BMC concluded that it could not grant Plaintiff a religious exemption to its Policy without incurring undue hardship in the context of a global pandemic that had, at that time, already claimed more than half a million lives nationwide. Because Plaintiff did not have a sincerely held *religious* belief and because her requested accommodation – to remain unvaccinated – posed an undue hardship on BMC's business, Plaintiff cannot establish her claim of religious discrimination under state or federal law and BMC is entitled to summary judgment.

Dated: August 23, 2024

Respectfully submitted,

DEFENDANT,

BOSTON MEDICAL CENTER,

By its attorneys,

/s/ *Jeanette M. Piaget Figueroa*
Jamie L. Kessler, BBO #681867
Matthew A. Freeman, BBO # 664355
Jeanette M. Piaget Figueroa, BBO #707465
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, Massachusetts 02116
Telephone: (617) 367-0025
jamie.kessler@jacksonlewis.com
matthew.freeman@jacksonlewis.com
jeanette.piagetfigueroa@jacksonlewis.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 23, 2024.

*/s/ Jeanette M. Piaget Figueroa*
Jackson Lewis, P.C.